IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CV-86-FL

| | |
|---|---|
| PATRICK O'CONNELL and JASON CROWLEY, <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF NEW BERN, NORTH CAROLINA and TODD CONWAY, in his individual capacity acting as a police officer for the City of New Bern, North Carolina, <br><br>Defendants. | ORDER |

This matter is before the court on plaintiffs' motion for preliminary injunction. (DE 16). The matters have been fully briefed, and in this posture the issue raised are ripe for ruling. For the reasons that follow, the court denies plaintiffs' motion.

## STATEMENT OF THE CASE

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 by filing complaint on May 25, 2018, asserting both facial and as applied constitutional challenges to the city of New Bern's code of ordinances ("Code") that apply to picketing on public streets, sidewalks, and other public places. More specifically, plaintiffs assert deprivations of their constitutional rights to freedom of speech and free exercise of religion under the First Amendment and their right to due process under the Fourteenth Amendment as a result of defendant city of New Bern and defendant Todd Conway's ("Conway") alleged interference with plaintiffs' religious picketing activities at the New Bern

Mumfest ("Mumfest") in both 2015 and 2017. Plaintiffs seek damages as well as declaratory and injunctive relief.

On July 12, 2018, plaintiffs filed the instant motion for preliminary injunction, seeking "an Order of this Court enjoining Defendants from enforcing the Code against them in any manner that prohibits or prevents Plaintiffs from exercising their constitutional rights in public spaces in the City." (DE 17 at 2). Defendants filed response in opposition on August 7, 2018, including affidavits in support from Brenda Blanco, city clerk for the city of New Bern; Marc Stephens, city manager for the city of New Bern; Toussaint Summers, Jr., chief of the New Bern police department; and defendant Conway, officer of the city of New Bern police department. Defendants additionally submit a current copy of Chapter 66, Article III of the Code, as adopted by the city council of the city of New Bern and thereafter amended. (See DE 22-1 at 3-22). Plaintiffs filed no reply.

## STATEMENT OF THE FACTS

Except as otherwise indicated, the facts alleged in the complaint and evidence proffered by defendants relevant to the resolution of the instant motion may be summarized as follows.

A.   The Code

The Code provides regulations setting forth conditions for picketing and definitions regarding the same, as follows:

Sec. 66-81. – Definitions . . . .

<u>Picket or picketing</u> means to make a public display or demonstration of sentiment for or against a person or cause, including protesting which may include the distribution of leaflets or handbills, the display of signs and any oral communication or speech, which may involve an effort to persuade or influence, including all expressive and symbolic conduct, whether active or passive.

<u>Sidewalk</u> means that portion of the street right-of-way which is designated for the use of pedestrians and may be paved or unpaved and shall include easements and

2

rights-of-ways.

Street means the entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter or right, for the purposes of vehicular traffic, including that portion that is known as the shoulder of the roadway and the curb . . . .

Sec. 66-84. – Picketing Regulations.

(a) Picketing may be conducted on public sidewalks, in any city-controlled park, or in other city-owned areas normally used or reserved for pedestrian movement, including easements and rights-of-way, and shall not be conducted on the portion of the public roadway used primarily for vehicular traffic.

(b) Notwithstanding subsection (a), picketing may not be conducted:
    (1) On any city-controlled park during a festival that has been permitted at that particular property or when that property has been otherwise reserved for private use . . . .

(c) Picketing shall not disrupt, block, obstruct or interfere with pedestrian or vehicular traffic . . . .

(d) Written or printed placards or signs, flags, or banners carried by individuals engaged in picketing shall be of such a size and/or carried on the sidewalks or other city-owned areas, as to allow safe and unobstructed passage of pedestrian or vehicular traffic. The staff or pole on which a sign, flag, or banner may be carried shall be made of corrugated material, plastic, or wood, and shall not exceed 40 inches in length and shall not be made of metal or metal alloy. If made of wood, the staff or pole shall be no greater than three-fourths inch in diameter at any point. A staff or pole must be blunt at both ends . . . .

(f) Spectators of pickets shall not physically interfere with individuals engaged in picketing. Picketers and spectators of pickets shall not speak fighting words or threats that would tend to provoke a reasonable person to a breach of the peace . . . .

(Compl. (DE 1) ¶¶ 20-21; see also DE 22-1 at 11-13).[1]

B.    Plaintiffs' Activities at Mumfest in 2015

According to defendants, MumFest is an annual fall festival that has been held for the past

---

[1] Plaintiffs' cites to the Code omit §§ 66-84(c) and (f) as well as the definitions for sidewalk and street.

3

37 years in the historic downtown of the city of New Bern. (DE 22 at 2). The public is invited to enjoy a wide variety of entertainment, attractions, exhibitors, and food, all locations of which are held open to the pubic free of charge. (Id.). Around 100,000 people attended MumFest in 2015 and 2017. (Id.). Plaintiffs allege, and defendants dispute, that the city issues permits to allow organizers to conduct Mumfest. (Compl. (DE 1) ¶¶ 22-26; DE 22 at 10 ("MumFest is not an event which requires a permit, and it is open to the general public")).

Plaintiffs allege that in 2015, plaintiffs were peacefully sharing their religious, political, and social message on the city's sidewalks and streets near the festival areas, during the festival, (Compl. (DE 1) ¶ 32),[2] and that the city enforced the Code regarding picketing by informing plaintiffs they were not allowed to speak to or distribute literature to festival attendees during the festival and by not allowing plaintiffs to carry a replica of a cross, while other individuals were allowed to carry five-foot-tall "windmills" on the city's sidewalks and streets, (id. ¶¶37-44).[3]

More specifically, plaintiffs allege that plaintiff Crowley entered the festival areas in 2015, but defendant Conway banned him from distributing literature. (Id. ¶ 33). Defendant Conway also banned plaintiff O'Connell from entering the festival unless he agreed to leave his cross outside the

---

[2] Defendants dispute this allegation, alleging instead that during both the 2015 and 2017 Mumfests, plaintiffs' "activities were constantly and consistently inflammatory and disruptive," that the city police department received many complaints in both years concerning plaintiffs' "harassment, insulting, and frightening of Mumfest attendees," and that "[a] number of the complaints involved Plaintiffs' confrontations, use of inflammatory rhetoric and verbal abuse of children in densely crowded areas." (DE 22 at 4). Defendants additionally assert that notwithstanding, the police department sought to protect plaintiffs' rights, and in 2015 intervened in an altercation wherein a Mumfest attendee attempted to use physical force in response to plaintiffs' behavior, causing the police department to arrest the Mumfest attendee and to allow plaintiffs to continue picketing. (Id. at 5).

[3] Defendants dispute this allegation in part, alleging"Plaintiffs were never told that they could not enter MumFest in 2015 or 2017 and communicate and share their messages with MumFest attendees" and "Plaintiffs have never been detained, arrested, or incarcerated for a violation of the Code, nor have Plaintiffs ever been threatened with detainment, arrest, or incarceration for a violation of the Code." (DE 22 at 4-5).

4

festival area. (Id. ¶ 34).[4] Plaintiff O'Connell attempted to stand in one location on the city's sidewalks and streets near the festival areas to hold his cross, but defendant Conway instructed two festival workers to park their trash utility cart in front of plaintiff O'Connell and directed them to place the cart in reverse so that the "beep" warning would drown out plaintiff O'Connell. (Id. ¶¶ 35-36). Defendant Conway and the event workers then laughed together while the constant "beep" sound emanated from the cart, and defendant Conway returned with another utility cart later in the day and engaged in the same activity again. (Id. ¶ 36).

C. Plaintiffs' Activities at Mumfest in 2017

Plaintiffs allege that in 2017, plaintiff O'Connell was again peacefully sharing his religious, political, and social message on the city's sidewalks and streets in and around the festival areas, during the festival. (Id. ¶ 55). Thereafter, a city representative ordered plaintiff O'Connell to cease and desist expressing his messages on the city's sidewalks and streets in and around the festival areas, or face arrest and incarceration. (Id. ¶ 56). Plaintiffs allege that a city officer "enforced the Code" and "admitted that the City was subjectively enforcing the Code." (Id. ¶ 57). Plaintiffs allege the city enforced the Code by informing plaintiff O'Connell that he was not allowed to carry a replica of a cross on the city's sidewalks and streets in and around the festival areas. (Id. ¶ 59).

D. Plaintiffs' Planned Future Activities

Plaintiffs allege that on "upcoming days – including but not limited to days in May 2018 through December 2022 – Plaintiffs have concrete plans to engage in their constitutionally protected activities by peacefully expressing religious, political, and social speech within the City's Public

---

[4] Defendants allege that the cross "was made with PVC piping, was nearly 10 feet tall and several feet wide" and therefore defendant Conway, who was on duty during MumFest in 2015 and 2017, "was concerned that the size and material of the Cross presented a safety hazard in the densely crowded areas of MumFest" and "asked Plaintiff O'Connell to leave the Cross outside the festival area." (DE 22 at 5).

5

Spaces, including during festivals and other events." (Id. ¶ 70).

## DISCUSSION

A.  Standard of Review

Rule 65 of the Federal Rules of Civil Procedure allows a court to enter preliminary injunctive relief prior to adjudication on the merits of the action. Fed. R. Civ. P. 65(a). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, plaintiff must establish four requirements: 1) likelihood of success on the merits; 2) likelihood of irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in plaintiff's favor; and 4) that an injunction is in the public interest. Id. at 20; see also Real Truth About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

B.  Analysis

    1.  Likelihood of Success on the Merits

        a.  Standing Issues Regarding Section 66-84(b) of the Code

It is well established that standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citations omitted). The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must show 1) an "injury in fact," meaning an injury that is "concrete and particularized" and "actual or imminent;"

2) a "causal connection between the injury and the conduct complained of," meaning that the injury is "fairly traceable" to the defendant's actions; and 3) a likelihood that the injury "will be redressed by a favorable decision." Id. at 560–61. In this instance, the court focuses on the injury in fact inquiry as it is determinative of whether plaintiffs have standing. See, e.g., Peterson v. Nat'l Telecommunications & Info. Admin., 478 F.3d 626, 632 n.3 (4th Cir. 2007) ("Because resolution of this appeal turns exclusively on the question of whether Appellant can demonstrate an injury in fact, we need not consider either of these additional standing requirements.").

Key to the standing inquiry in this case is that "[a]lthough there is broad latitude given facial challenges in the First Amendment context, a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by application of those provisions." Covenant Media Of SC, LLC v. City Of N. Charleston, 493 F.3d 421, 429–30 (4th Cir. 2007) (citations omitted) (emphasis added). Thus, a finding that a plaintiff has standing to bring suit challenging one provision of an ordinance "does not provide it a passport to explore the constitutionality of every provision . . . ." Id. at 429.

Here, plaintiffs allege the following injuries: in 2015 and 2017 plaintiffs were not allowed to speak to or distribute literature to Mumfest festival attendees, during the Mumfest festival, (Compl. (DE 1) ¶¶ 37-40, 56) and were not allowed to "carry a replica of the cross," (id. ¶¶ 43-44, 59). In both 2015 and 2017, plaintiffs allege "the Mumfest was located on the City's sidewalks and streets," and that all injury to plaintiffs occurred on the city's sidewalks and streets and only on the city's sidewalks and streets. (See id. (alleging 19 times that all facts alleged in this case occurred on the city's "sidewalks and streets")).

Plaintiffs alleged injuries implicate § 66-84(a) of the Code, which allows picketing on public

7

sidewalks and other city-owned areas normally used or reserved for pedestrian movement, and § 66-84(d) of the Code, which regulates the size, composition, and construction of printed placards, signs, flags, or banners carried by individuals engaged in picketing. However, plaintiffs' arguments in support of preliminary injunction almost wholly focus on § 66-84(b) of the Code, which prohibits picketing "[o]n any city-controlled park during a festival that has been permitted at that particular property or when that property has been otherwise reserved for private use . . . ." (Code § 66-84(b) (DE 22-1) at 11-13).

Turning to plaintiffs' as applied challenge to § 66-84(b), upon review of the facts alleged in plaintiffs' complaint, plaintiffs have failed to allege that they were restricted in disseminating their religious views in "any city-controlled park." (Id.). Additionally, defendants dispute plaintiffs' allegation, and plaintiffs do not respond, that the festival at issue, Mumfest, requires a permit or is property that has been otherwise reserved for private use. (See DE 22 at 10 ("Plaintiffs cannot advance this argument . . . because Plaintiffs have not alleged that they have ever attempted to picket on a City-controlled park during an event for which the City issued a permit or otherwise reserved the City-controlled park for private use," and "MumFest is not an event which requires a permit, and it is open to the general public" and "Plaintiffs were free, and would be free, to picket MumFest in City-controlled parks in accordance with the Code's content-neutral regulations on picketing."); see also id. at 2 ("Plaintiffs have not alleged and do not argue that they ever entered, or attempted to enter, a City-controlled park during MumFest or any other city-sponsored event or festival")).

Turning to plaintiffs' facial challenge to § 66-84(b), in order for plaintiffs to have standing to maintain this challenge, plaintiffs must establish there is a "credible threat" that defendants will apply § 66-84(b) to plaintiffs' future conduct. See Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir.

8

2018) (holding one way a plaintiff may establish "ongoing or future injury in fact" is to show plaintiffs "intend to engage in conduct at least arguably protected by the First Amendment but also proscribed by the policy they wish to challenge, and that there is a 'credible threat' that the policy will be enforced against them when they do so.").

Here, plaintiffs assert only that in "upcoming days," over roughly the next four years, plaintiffs "have concrete plans to engage in their constitutionally protected activities by peacefully expressing religious, political, and social speech within the City's Public Spaces, including during festivals and other events." (DE 17 at 4-5 (citing Compl. (DE 1) ¶ 70)). Plaintiffs argue generally that "[b]ased on Plaintiffs' experiences at the 2015 and 2017 Mumfest festivals, they can expect the Code to be applied to their future constitutionally-protected activities in the City's parks." (Id. at 17).

Plaintiffs have not specified when or where § 66-84(b) may be applied to plaintiffs' actions and instead have implied "activities" and "festivals and other events" referenced would not implicate § 66-84(b), as this section has not been alleged to have been implicated in the past, rendering plaintiffs' allegations "imaginary or wholly speculative." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 302 (1979); see also Susan B. Anthony List v. Driehaus, 134 S.Ct. 2334, 2345 (2014) ("history of past enforcement" is "good evidence" of a genuine threat of enforcement); O'Shea v. Littleton, 414 U.S. 488, 496 (1974) ("[P]ast wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury.").[5]

In sum, plaintiffs' motion for preliminary injunction is based primarily on plaintiffs'

---

[5] For the same reasons stated above, plaintiffs have failed to allege injury in fact sufficient to establish standing regarding plaintiffs' due process claims where plaintiffs argue only that "[a]s discussed more fully above, the City has unbridled discretion in applying and enforcing the Code," referencing the city's discretion in applying and enforcing § 66-84(b) and, to a very limited extent as previously discussed, § 66-84(d). (DE 17 at 16).

9

challenge to § 66-84(b) of the Code. However, based on the current record before the court, the court finds plaintiffs have not alleged a past injury based on application of this section of the Code, and any potential injury to the plaintiffs is too remote, contingent, and speculative at this time to satisfy standing requirements necessary to support plaintiffs' motion. Therefore, plaintiffs have not established a likelihood of success on the merits regarding plaintiffs' claims asserted in support of plaintiffs' motion for preliminary injunction premised on § 66-84(b) of the Code.[6]

        b.      Sections 66-84(a) and (d) of the Code

Turning to potentially applicable other sections of the Code, §§ 66-84(a) and (d), plaintiffs have failed to establish likelihood of success on the merits as to these sections of the Code, as required for the court to grant motion for preliminary injunction.

In this case, the dissemination of plaintiffs' religious views is protected by the First Amendment. See, e.g., United States v. Grace, 461 U.S. 171, 176 (1983) ("There is no doubt that as a general matter peaceful picketing and leafletting are expressive activities involving 'speech' protected by the First Amendment."). Additionally, it is undisputed that the government may impose reasonable time, place, and manner restrictions on speech like that which plaintiffs seek to express, as long as those restrictions are 1) are content-neutral, 2) serve significant government interests, 3) are narrowly tailored to serve these significant interests; and 4) leave open ample alternative channels of communication. See id.; see also Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 647-48 (1981). The court will address each of these

---

[6] Plaintiffs argue § 66-84(b) does not support a significant government interest, is not narrowly tailored, and does not leave open ample alternative channels of communication. (See DE 17 at 11-14). Regarding § 66-84(b), defendants do not directly address plaintiffs' arguments, instead arguing that this section was not applied to plaintiffs. (See DE 22 at 10-11). Given the court's holding above, it is unnecessary to address plaintiffs' arguments as to the unconstitutionality of § 66-84(b) at this time. The court takes no position as to whether or not plaintiffs would be entitled to preliminary injunctive relief if they were able to make a showing of injury as to § 66-84(b) of the Code.

factors in turn below.

      i.      Content-Neutral

The pertinent issue with respect to content neutrality is whether the city has regulated speech "because of disagreement with the message it contains." Hill v. Colorado, 530 U.S. 703, 719 (2000) (citations omitted).

As previously stated, § 66-84(a) prohibits picketing "on the portion of the public roadway used primarily for vehicular traffic," and § 66-84(d) regulates the size, composition, and construction of printed placards, signs, flags, or banners carried by individuals engaged in picketing. These sections regulate conduct even-handedly to every organization or individual that attempts to engage in picketing activities.

Plaintiffs have put forth no argument that any of these sections are not content-neutral restrictions on speech. (See DE 17 at 11). Plaintiffs do argue, however, that a "flaw of the Code is the vesting of unbridled discretion in the decision-maker," asserting as an example that "at the 2015 Mumfest festival," some "individuals were allowed to carry five-foot-tall 'windmills' on the City's sidewalks and streets," yet, "at the same time, Plaintiff were not allowed to carry a replica of a cross . . . ." (DE 17 at 15).

While an otherwise valid content-neutral regulation is nevertheless unconstitutional if it vests unbridled discretion to those who enforce it because they have the power to suppress particular points of view, Thomas v. Chicago Park Dist., 534 U.S. 316, 323 (2002), here the court finds that the applicable section, § 66-84(d), provides standards to guide enforcement and prohibit discrimination, including the specific directive that, while picketing, the "staff or pole on which a sign . . . may be carried . . . shall not exceed 40 includes in length." The current record before the

court lacks meaningful details as to what was being carried by other individuals, why, and whether or not the city was applying the Code in a discriminatory manner and indicates the other individuals referenced by plaintiffs were not engaged in picketing.

Accordingly, the plaintiffs have not shown a likelihood of success on the merits as to this prong of the analysis.

### ii. Significant Governmental Interest

Plaintiffs argue that the regulations at issue do not serve a significant governmental interest, stating that "fear of disturbance during festivals cannot justify the infringement of First Amendment rights." (DE 17 at 11). Defendants argue that the regulations on picketing at issue in this case "serve and facilitate the City's significant governmental interests of protecting public safety and order, crowd control, maintaining the flow of pedestrian and vehicular traffic, and maintaining access to buildings abutting sidewalks and driveways." (DE 22 at 9).

As recognized by the Supreme Court, the city's interests in "ensuring public safety and order" and "promoting the free flow of traffic and sidewalks" are legitimate, significant governmental interests. McCullen v. Coakley, 134 S. Ct. 2518, 2535 (2014); see also Reynolds v. Middleton, 779 F.3d 222, 227 (4th Cir. 2015) ("we generally have not required the government to present evidence to show the existence of a significant governmental interest; common sense and the holdings of prior cases have been found sufficient to establish, for example, that the government has a significant interest in public safety").

Accordingly, the court holds at this stage in the proceedings, the regulations at issue serve a significant governmental interest.

### iii. Narrowly Tailored to Serve Significant Government Interest

A content-neutral regulation is narrowly tailored if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." McCullen, 134 S.Ct. at 2535. The Code's regulations on picketing "need not be the least restrictive or least intrusive means" of serving the city's legitimate governmental interests. Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989). The city is not required to "present a panoply of empirical evidence" in order to satisfy this standard," but must "make some evidentiary showing" that its concerns are real and that the Code's restrictions directly and materially address its concerns. Ross v. Early, 746 F.3d 546, 556 (4th Cir. 2014).

As asserted by defendants and not disputed by plaintiffs, §§ 66-84(a) and (d) directly advance the city's significant government interest of public safety and order, crowd control, maintaining the free flow of pedestrian and vehicular traffic, and maintaining access to public buildings. (See DE 22 at 10-11).

The court holds that based on the current record, §§ 66-84(a) and (d) are content-neutral regulations that do not burden substantially more speech than is necessary to further the government's legitimate interests.

      iv.  Alternative Means to Communicate

Finally, §§ 66-84(a) and (d) allow for sufficient alternative means of communication. Plaintiffs argue that "during a permitted festival or other private use of the public property, no alternative channel of communication is provided," (DE 17 at 13); however, this argument is applicable only to § 66-84(b), not 66-84(a) and (d). Plaintiffs make no argument as to §§ 66-84(a) and (d), and defendants argue the Code "does not, and did not in 2015 and 2017, prevent Plaintiffs from being able to interact and communicate with a substantial number of MumFest attendees inside

13

and outside of the event areas." (DE 22 at 12). Additionally, defendants allege "Plaintiff O'Connell was able to carry his Cross outside the Mumfest event areas in such manner that would not jeopardize public safety or interfere with pedestrian or vehicular traffic." (Id.).

For these reasons, and those stated above, the court finds plaintiffs have failed to make a clear showing of likelihood of success on this prong of their First Amendment claim as well as all other prongs.

## CONCLUSION

For the foregoing reasons, the court DENIES plaintiffs' motion for preliminary injunction. (DE 16).

SO ORDERED, this the 10th day of December, 2018.

LOUISE W. FLANAGAN
United States District Judge